Thank you. Good morning. Good morning, Your Honor. My name is Jonathan Kaufman. I represent the petitioner Angelica Martinez. Your Honor, this is an asylum case, an immigration case, and as in all asylum cases, there is a pattern of issues that arise in these type of cases. The first issue I'd like to address is an issue of credibility. The immigration judge in this case did not make an explicit credibility finding. Under the law of the circuit, in the absence of an explicit credibility finding, the court should presume that the testimony is credible and accord the alien's testimony credit and full evidentiary weight. I believe that's what would be appropriate here. The immigration judge in making a – Counsel, is it possible that the immigration judge could have credited your witness? I don't – And found that simply was – that her reasons were simply legally insufficient once they'd been credited? I don't think he did that because he required corroboration. And the fact that he leaned so heavily on the requirement of corroboration indicates that he didn't accord the testimony full credibility. Can an I.J. require corroboration, or was the I.J. simply suggesting that additional corroboration would have been required, that the evidence was legally insufficient, and therefore without other corroborating evidence, that your client didn't satisfy the standards? Corroboration could be required of an alien applying for asylum, but I think that would trigger the standard in the SEDU case, which says that the corroboration can only be corroborating proof that is easily available to the alien. In this case, what the I.J. required was evidence of Mrs. Martinez's father's former military service. The evidence shows that the father was located in Mexico. Would that have been difficult to get a declaration from him or a letter from him? I think that under SEDU, whether it's a declaration or it's a copy of some sort of military document or something, any evidence that would be located overseas under SEDU is not easily available. And isn't the type of evidence that an alien is required to present to corroborate otherwise credible testimony, which is what you're dealing with here. You're dealing with a – there was no finding that she was not credible. It's in a gray area where the immigration judge was saying it was vague on certain points. It's a practical matter. It just seems difficult here to see any link between whatever problem the father may have had with whoever was at the house and imputing any of that difficulty to her at the time, let alone now or going forward. I mean, how do you respond to that? There is an absence of any other explanation for the – for the people coming to the home other than to punish the father for his former military service. At the time they arrived, what the evidence showed was that the father had served in the Army but was no longer. Okay. So let's assume all that. But, I mean, what's the link between that and imputing whatever the difficulty was to her at the time or prospectively if she were to be returned? Well, the link is that she was herself harmed and persecuted by the men who – Well, on a cosmic scale. Did they say anything? Sometimes in these cases there are statements made by the assailants. Is there anything in the record that – or they were doing this to keep you away from the Army? We're doing this to you because we – you're with your father and he's on the wrong side of this whole situation? Anything like that? There is evidence that they had mentioned his military papers was why they came there. And I think that what the government argues in its opposition brief is that this wouldn't be on account of because they weren't trying to punish him for his former military service, but because they wanted something from him. They wanted his military papers. But you could also interpret that to mean that they were asking for his allegiance. They wanted his papers as a way of showing that he was no longer going to be aligning himself with the government. We might be able to assume that, but isn't that her responsibility to demonstrate that? I mean, we might assume a lot of things, but I think you have an affirmative responsibility to come forward and demonstrate that she does have a well-founded fear of persecution. She accomplished that, I believe, because there was no other evidence offered to explain why these people would invade the homes so many times, why they would engage in such violent activity. But no evidence offered to explain is not the same as an explanation. When you have the burden of proof, saying that there's no other explanation is trying to cast the burden back on the government to explain why. Well, she did explain. She did identify them as being guerrillas. She identified them as coming to the home because of her father's past military service. She presented evidence that the men who came to the home referred to her father's past military service. So there was evidence to show that that was the reason, their subjective motive for coming there, that she presented, and there was no evidence offered at all by the government to rebut that. So even if she has the burden, she presented the evidence. There was nothing to show that there was any other reason. That's why I bring that up. You want to make any comment on changed country circumstances? Well, I think that the issue of changed country circumstances is limited here because the immigration judge didn't really lean too much on changed country circumstances. He only mentioned them at the very end of his decision, and he says in passing, he mentions substantial changes in Guatemala that would show that the guerrillas wouldn't be any further threat to Mrs. Martinez. But the only evidence offered was this profile, which was offered by the attorney represented by the government. They made no explanation why they were offering that evidence into the record. They didn't point to any passage in that profile. The immigration judge didn't indicate any passage in that profile. The one passage that is in that profile about the guerrillas show that they continue to operate in Guatemala. They continue to engage in violence and to make death threats. There is no individual analysis, as the court requires, of a particular claim. For instance, that report does not at all address the scenario that was presented by this application, which is violence directed against former combatants and their families. That type of claim is not even referred to in this profile. The profile doesn't say anything about whether internal relocation by Mrs. Martinez was possible when she came from a department of ZACAPA, which apparently is not even one of the conflictive departments. In that profile, they say that it is possible for Guatemalans to move from one area of the country to another, to move from a conflicted area to a non-conflicted area, and this department isn't even addressed in that profile. So the immigration judge didn't really rely on the profile, and the profile doesn't engage in the individual analysis that the court requires for this particular claim. So I don't see how that country profile necessarily negates Mrs. Martinez's case. I think that she's shown that these armed men invaded her home twice. She witnessed her father being beaten. She saw her father on the ground bleeding. She witnessed her mother being assaulted at gunpoint. She herself was sexually molested. She was possibly scarred for life as a result of a fire that she claims was possibly set by these guerrillas. There's no explanation in this record other than what she did. Mr. Kaufman, if your client were returned to Guatemala, what evidence in the record do you have that anybody left in Guatemala would know who she was or care? Well, the – I'm sorry, I don't mean to be disrespectful. I mean of the guerrillas that she alleges. What evidence do you have that guerrillas would know and say, oh, you're so-and-so's daughter, and now we're going to get you because your father was nonresponsive to our pleas years ago? Well, I don't believe that this case at the level of the deportation hearing got that far, Your Honor, because I think that when the immigration judge made his legal errors and said that she had not proven past persecution, it stopped. If, in fact, Mrs. Martinez proved past persecution, then she's entitled to a presumption. And then that would change everything that's going on here today because then the issue would not be whether or not she's proving what Your Honor is asking. Is she at risk? It would be a question of whether or not the government can prove that she would not be at risk. And the only evidence here is this profile. And the only thing this profile says about a claim like hers is that the guerrillas are still there and the guerrillas are still engaging in the exact type of misconduct and violence that she complains of in her application for asylum. So we could – we aren't here to speculate, and I don't think the Court can under Ventura engage in that kind of prospective analysis. It's really restricted to the evidence that was received at the deportation hearing, and I don't think that the government could show that she doesn't have a well-founded fear based on this evidence. I think I'm out of time. Okay. Thank you, Mr. Goffin. Thank you. Vander Star. Good morning, Your Honor. May it please the Court. My name is Thankful Vander Star, and I represent the Attorney General. As this Court is aware, the standard of review here is whether there is substantial evidence in the record to support the immigration judge's conclusion. Put another way, does the evidence compel a different conclusion? And the government submits that the evidence here simply does not compel the conclusion that the petitioner here suffered past persecution on account of a statutorily protected ground or that she has a well-founded fear of persecution on account of a statutorily protected ground. The immigration judge did credit her story. There was no adverse credibility finding and simply found that there was not enough. There was not enough. And, in fact, made note of the fact that at points she had even exaggerated her claim in her asylum application where she said that her father was bleeding to death and that the guerrillas attempted to rape her. She tried to make it more than it was. Now, the government is not disputing that there was something that happened and that that something that happened could very well have been traumatic and something that the petitioner will live with for the rest of her life. Having somebody come into your home and assault your family members and assault you, that's a terrible thing to happen. But there is no evidence in the record that it happened based on her political opinion or her religion or her race or her ethnicity or her membership in a particular social group. The evidence showed that her father had been in the Army and had left the Army approximately a year before these events happened. If the evidence showed that, why was the immigration judge requiring corroboration of it? Well, Your Honor, the immigration judge was – wanted corroboration of that in order to have more information about why the guerrillas were targeting her father. Oh. Well – The Army is on one side, the guerrillas are on the other, right? Correct. At the time of these events. Correct. And they were engaged in armed conflict. That's right. This was an armed revolutionary insurrection aimed at the violent overthrow of the Guatemalan government, wasn't it? That's correct. However, Your Honor, there are ample cases from this circuit and other circuits discussing that civil unrest and conditions of violence and civil war and that sort of thing are not enough to qualify as persecution on account of a protected ground. Essentially, if everybody who suffered under the conditions you were describing came here and sought asylum, everybody would get asylum. I don't understand how that responds to my question, which is you started this chain of argument by saying the evidence showed the father was in the military. And I agree with you. I think it does. Why, then, was the immigration judge requiring corroboration of a fact? Well, the immigration judge noted that there was no evidence, specific evidence, about when the father left the military. Petitioner testified it was approximately a year before these incidents occurred, what his rank was, what his activities were, which would all have bolstered her claim, which is implied and never actually stated that the guerrillas were persecuting him on account of his prior military activities. She never said that. She said he had been a lieutenant or a sergeant. Honestly, Your Honor, we'll out of the military a week before or six months before. I think part of the problem here is that we'll never know what difference that would make. She's credible, correct? Yes. There's no adverse credibility finding. Correct. And why ask for this? Why say to the petitioner, I want corroboration? Because her claim was weak. Because she has the burden of proof and her claim was weak. And let me point out that even if we — this Court reaches the conclusion that that specific finding by the immigration judge, that corroboration would have been useful, was an error, it was harmless error. If we assume whatever we want to assume, which Your Honor pointed out, we really aren't supposed to be doing because petitioner here has the burden of proof. If we assume that what she said is true, that he was in the Army and that he left a year before these events occurred, what we have here is her testimony that the guerrillas said that they were looking for some papers.  Counsel suggested maybe it was to take the papers so that that would sort of force the father to turn over his allegiance to the guerrillas. Maybe. But that was not put in the record by the petitioner here. The petitioner made one statement, unsupported with anything in terms of that she heard someone say this, that she believed the guerrillas wanted her father to join them. But again, recruitment efforts by a guerrilla group are not grounds for a finding of persecution on account of a protected ground. What does the country report tell us about current positions? The country report indicates that although there has been a peace accord and the guerrillas have disarmed, there is continuing violence. However, that violence is directed primarily at media officials and at human rights activists and that that violence is generally targeted in areas where there's a large Indian population. Petitioner presented no evidence, as Your Honor was pointing out, that she faces persecution if she were to return to Guatemala, that she personally. The fact that the State Department report says there's still violence is not enough for her to overcome the hurdle of her burden of proof. And it is her burden of proof because what we have here is a finding of no past persecution that is supported by substantial evidence in the record, which means that it is her burden of proof to show a well-founded fear. There was no presumption raised that the government must rebut that she has a well-founded fear of persecution. The evidence also belies her story, her claim that the guerrillas wanted the father to join them. Because the second time they came to the house, they were there, and Petitioner and her mother were there, and they assaulted Petitioner and her mother. And when the father arrived, they left. They didn't have any conversation with him. They didn't try to get anything out of him. If that isn't just thugs coming into someone's house and assaulting them, I don't know what is. Petitioner remained in Guatemala with her parents for two months after this last event, and she did not testify about any other occurrences. Her parents remained for another three months after she left for the United States, before they left for Mexico. And, again, there was no evidence put into the record that anything else happened to Petitioner's parents after she had left. There simply is no evidence in the record to support overturning the immigration judge's decision that there was no persecution on account of a protected ground and that she does not have a well-founded fear on account of a protected ground. If there are no other questions. I don't think so. Thank you very much, counsel, both of you. Thank you. The matter just argued will be submitted. Thank you.
judges: Rymer, Hawkins, Bybee